[Civ. No. 8961.   Third Dist.   Apr. 3, 1957.]

CHARLOTTE V. SWANSON, Respondent, v. EMMA C. BOGATIN et al., Appellants.

Geary, Spridgen & Moskowitz, Cooley, Crowley, Gaither, Godward, Castro & Huddleson, Augustus Castro and Frank D. Tatum, Jr., for Appellants.

Dilley & Eymann and Kenneth Eymann for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment in the amount of $20,170.45 entered upon a jury's verdict in a personal injury action.

The accident occurred on a clear, dry afternoon at the intersection of Todd Road and Primrose Avenue, public roads near Santa Rosa, each of which is two-laned. Appellant Bogatin was proceeding south on Primrose Avenue toward the intersection, intending to turn right and go west on Todd Road. Respondent Swanson was driving east on Todd Road toward the intersection, intending to continue toward the east. The view of each driver was unobstructed as related to the other vehicle for more than 100 feet back from the intersection. Appellant Bogatin was an inexperienced driver operating under an "instruction permit." (Veh. Code, § 253.) She was driving a Chevrolet sedan owned by appellant Huerby, whose sales manager, a Mr. O'Leary, was demonstrating the car to appellant Bogatin. She drove into the intersection and made a right-hand turn into Todd Road, but collided with the car being driven by respondent just after leaving the intersection. She testified she did not see respondent's car until a few seconds before the impact; that she did not have time to look to her right before making the turn and relied on Mr. O'Leary's assurance that it was "O.K." to turn. Appellants charged contributory negligence on the part of respondent in that she drove across the center line and so collided with their vehicle on its right side of the road. There was sharp conflict in the evidence as to which vehicle left its proper side of the road. Bogatin and Mr. O'Leary both testified that the collision occurred on their side of the road, and that respondent had crossed the center line. Respondent testified that she was on her own side of the road at the time of collision; that the appellant's car crossed over and struck her car. This was corroborated by a highway patrolman who arrived shortly after the accident while the vehicles were still where they had come to rest after the collision, and who observed the scene, including turn marks and skid marks and deposition of debris. He testified the

debris was on the south side of Todd Road, and that the collision had occurred in the middle of the south side. A tow-truck driver, an arriving witness, corroborated the officer as to the marks on the pavement and as to the point where the debris was deposited.

Appellants contend that reversible error was committed by the trial court in that it instructed the jury as follows: "It is presumed that the plaintiff at the time and place of the accident in question was not guilty of any negligence herself, but was exercising reasonable care for the protection of her own safety." It is conceded that this was error for the reason that respondent herself had testified fully as to her actions at the time involved. (*Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809] ; *Nunnemaker* v. *Headlee,* 140 Cal.App.2d 666, 675 [295 P.2d 438] ; *Verhaegen* v. *Guy F. Atkinson Co.,* 126 Cal.App.2d 442, 445 [272 P.2d 855].) The issue presented on appeal is whether or not the error was so prejudicial that the judgment should be reversed. A review of the entire record has convinced us to the contrary. The jury were metriculously instructed as to the issues of negligence, contributory negligence and as to the burden of proof. The accident was thoroughly described in the testimony, and while the witnesses did not agree as to the conduct of each driver, the vital conflict was as to where the collision occurred. If respondent was negligent, it was only because she went over on the wrong side of the center line, in which case the collision occurred there. If defendant was negligent, it was only because she went south of the center line, in which case the accident occurred there. In short, this case must have been decided by the jury according to their finding as to where the collision occurred, and it is highly unlikely that their resolution of that issue was influenced in any degree by the erroneous instruction. It has often been decided that the question as to whether or not the giving of such an instruction as this on the presumption of due care is prejudicial must be determined upon the facts of the particular case. (See *Verhaegen* v. *Guy F. Atkinson Co., supra,* page 444, and the cases cited.) In view of the constitutional mandate that no judgment shall be set aside on the ground of misdirection of the jury unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice, we cannot reverse for the error under discussion.

Appellants next contend that error was committed

when, during the jury's deliberations, they returned to court and asked for information. The following occurred: "FOREMAN: We want the amount of the doctor bills. THE COURT: Is that all? FOREMAN: That's all I think we do. THE COURT: The doctor bills or the other special damages? FOREMAN: Yes, sir; that's right. THE COURT: You want the special damages, the total of them? FOREMAN: Please. THE COURT: $5,170.45. Does that answer your query? Did you get that figure—$5,170.45? FOREMAN: Thank you, sir." Shortly after the above occurrence, the jury returned its verdict in favor of respondent in the amount of $20,170.45. Based on the foregoing occurrence, appellants contend that error was committed in several respects. First, appellants say that it was prejudicial error to instruct the jury that they could assess special damages in the amount of $5,170.45. The special damages claimed consisted of two classifications: (1) Out of pocket expenses for doctors, hospitals, nurses, etc.; (2) Loss of wages. Appellants assert that the sum mentioned by the court included $2,170.45 for the first classification of special damages and $3,000 for loss of wages. They say that the total amount proved as to the first classification was $1,814.02, but in this they are in error as the record shows proof totaling the larger sum. They say that no part of the loss of wages could be considered as special damages. Again, we think they are in error. ▪ Impairment of earning capacity, which is an element of general damages, is not the same as actual, proved loss of wages between the occurrence of the injury and the trial; if loss of wages during that period is alleged and can be proved with reasonable certainty, the damage can be recovered as special damages. (*Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802, 812-813 [167 P.2d 729]; *Maus* v. *Scavenger Protective Assn.*, 2 Cal.App.2d 624, 631 [39 P.2d 209].)

It appears that the cost of medical, hospital and nursing care reasonably required by respondent was sharply in dispute. The evidence relating to her loss of wages claimed as special damages was also sharply in conflict. The maximum shown as to both classifications of special damages was as given above. ▪ Appellants contend that by the colloquy between the court and the jury during the jury's deliberations the court in effect told the jury that the amounts they were to allow for special damages were the maximum sums. However, when the entire record bearing upon this matter is examined, we think that the jury could not have obtained that impression. By her complaint, respondent asserted she had

received general damages to the amount of $50,000 and special damages for treatment in an amount as yet unascertained. She also pleaded that she had suffered loss of wages in an amount as yet unascertained. She prayed for the sum of $50,000 general damages, for such sum as she would prove at the trial for treatment costs and for such other sum as might be shown to have been lost through loss of wages. During its instructions on the subject of damages, the trial court, in three separate instructions, mentioned the maximum sums claimed for the three items of damages by saying that the verdict could not exceed those sums. For instance, the court instructed the jury that if they found liability, they were to award respondent such damages as they might find would compensate her, the court adding "not to exceed, however, the general or compensatory and special damages alleged to have been sustained in the complaint—that is to say, not to exceed the sum of $50,000 general damages insofar as the complaint is concerned, and not to exceed the sum of $5,170.45 special damages." We think that from the three instructions which gave the jury the same directions that its award could not exceed the maximum sums mentioned, the jury must have understood that the court was not telling them that respondent was entitled to any set sum as special damages any more than it was telling them that she was entitled to the set sum of $50,000 general damages. In view of the sharp conflict in the evidence as to the items of special damages, we have no doubt that, during the argument, these matters were presented to the jury, respondent's counsel arguing for the maximum awards possible under the proof, and appellants' counsel presenting the defects in proof and conflicts in proof and asking that a much lesser sum or no sum whatever be awarded for such damages. When, therefore, the jury returned and asked the questions and received the answers it did it must have understood that once more the court was referring to the maximum sums which they could award for special damages and was not telling them that the sum mentioned ought to be the amount of their verdict.

It appears from the record that a joint judgment for $20,170.45 was entered against both defendants, although appellant Huerby was the owner of the car. His liability was that of an owner under Vehicle Code, section 402, and the award against him should have been limited to $5,000. There appears to have been a stipulation at the trial that the jury could return a verdict in a single sum against both, and that

the judgment against Huerby, if the award totaled more than $5,000 would be entered as against him for that sum. Respondent on appeal concedes that the judgment against Huerby should be modified to comply with the statutory limit.

The judgment against appellant Huerby is modified by reducing it in amount to $5,000. As so modified, the judgment against him is affirmed. The judgment as entered against appellant Bogatin is affirmed. Respondent is to recover costs.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied April 26, 1957, and appellants' petition for a hearing by the Supreme Court was denied May 29, 1957.