[Civ. No. 34103. Second Dist., Div. Four. Mar. 9, 1970.]

HAROLD KUHLMANN, Plaintiff and Respondent, v.
PASCAL & LUDWIG, Defendant and Appellant;
FOREMOST DAIRIES, INC., Intervener and Respondent.

## COUNSEL

Schell & Delamer and John M. Maller for Defendant and Appellant.

Wise, Kilpatrick & Clayton and John L. Fort for Plaintiff and Respondent and for Intervener and Respondent.

## OPINION

**KINGSLEY, J.**—Plaintiff, a relief milkman employed by Foremost Dairies, was injured while delivering milk to a customer of the dairy. Claiming that his injury was caused by the negligence of defendant Pascal & Ludwig, he brought suit against them for damages. His self-insured employer intervened, as is permitted by section 3853 of the Labor Code. After a jury trial, a general verdict in the amount of $15,000 was returned against defendant and judgment was entered thereon. Both verdict and judgment refer only to the plaintiff and to defendant; neither refers to the intervener. Defendant has appealed; the intervener has not appealed. For the reasons discussed below, we modify the judgment as entered and affirm it as so modified.

Defendant was engaged in constructing a storm drain and, for that purpose, had made an excavation approximately 20 feet in width and varying in depth to a maximum depth of 20 feet. In order to keep people out of that excavation, defendant had erected a safety fence made of chicken wire. The progress of the work frequently resulted in the fence being knocked down. Defendant's job engineer was aware of this but, if it was noted after working hours, the matter was not always corrected until the next morning. No warning lights were installed.

At about 4:30 a.m., plaintiff drove his truck along the street on which the work was being done. He parked his truck and alighted, carrying his milk rack in his right hand and a flashlight in his left hand. The safety fence was down, plaintiff did not see it, stepped on it, fell, and was injured suffering a colles fracture of the right wrist and (as later developed) some problems with his knees.

I

Defendant objects that, after proceeding through the entire trial with the jury being fully aware of the existence of the intervener's claim of nearly $10,000, the court, on its own motion, instructed the jury as follows: "The intervenor, Foremost Dairies, Inc., has proved the amount of Workmen's Compensation benefits paid to plaintiff and you are not to be concerned further with any issue tendered by the complaint in intervention of Foremost Dairies in this case."

Defendant alleges that this instruction cannot be reconciled with a later instruction (given at the request of plaintiff): "If you decide that plaintiff is entitled to judgment against the defendant, you will find his damages in accord with my instructions on the subject of damages (and without regard to the amount of such compensation benefits paid to or for the plaintiff,) and will not deduct from the damages so found by you the amount of such compensation benefits paid to or for the plaintiff. The law provides a means by which the employer or the employer's insurer will be reimbursed for the compensation benefits paid to or for the plaintiff."

The contention that the two instructions conflicted clearly is without merit; both told the jury the same thing. Nor can we see that they could have caused confusion in the minds of the jurors. It is common practice to advise a jury that, although they have heard testimony on a particular issue, it is not one for them to' consider in arriving at a verdict. The problem is not whether the two instructions were in conflict or were confusing, but whether they were correct.

■ Section 3850 et seq., of the Labor Code provide a scheme for the adjustment of the respective interests of an employee and an employer (or the latter's insurer) in a recovery in tort from a third party. Where, as in the case at bench, the employee initiates the action against the third party, the employer has three choices: (1) it may allow that action to proceed, in the sole name of and under the exclusive control of, the employee, and claim a lien on any judgment for the amount of its compensation payments; (2) it may initiate its own action against the tortfeasor and thereafter cause that action to be consolidated with the action brought by the employee; or (3) it may (as it did here) intervene in the action, thus becoming a party to the suit. (*Witt* v. *Jackson* (1961) 57 Cal.2d 57, 69 [17 Cal. Rptr. 369, 366 P.2d 641].)

■ If the employer elects the first of these alternatives, it is clear that the jury is not concerned, in arriving at its verdict, with the rights of the employer and that the verdict and judgment may properly refer only to the plaintiff and to the third party tortfeasor. It is for the court, after judgment has been entered (or concurrently therewith), to make the orders provided for by subdivision (b) of section 3856 of the Labor Code. ■ But if the employer has elected to exercise its statutory right of intervention, and thus becomes a formal party to the proceeding, the ordinary rules of practice would seem to require that its rights be expressly set forth both in the verdict and in the judgment.

■ However, the majority of this court concludes that, in a case such as that at bench, where no issue under *Witt* v. *Jackson* is present, and where

there was no factual issue as to the amount of the intervener's claim,[1] all that is required is that both verdict and judgment expressly designate both the plaintiff-employee and the employer-intervener as parties in whose favor the verdict and the judgment run and that any segregation of the total judgment, under subdivision (c) of section 3856, should be made by the court, after entry of judgment. Such procedure accommodates both the requirements of the Code of Civil Procedure that a judgment be based on a verdict, and the language of section 3856.[2]

■ But the failure of the verdict in this case to refer expressly to the intervener did not prejudice the defendant. Obviously, the jury was required to start any deliberation as to the amount of damages in the manner directed by the second of the challenged instructions—*i.e.,* by first finding the amount of damages by applying the ordinary rules of law in any tort case. The error lay in not providing them with verdict forms which would have resulted in a verdict for both plaintiff and intervener.

But the error, in the case at bench, was purely formal. It was not prejudicial. The rights of the sole appellant—defendant tortfeasor—can be fully protected by the revision of the judgment which we hereinafter direct.

## II

■ Defendant Pascal alleges that the court erroneously refused to instruct on the issue of *Witt* v. *Jackson* (1961) *supra,* 57 Cal.2d 57. The case of *Witt* v. *Jackson* held that a third party is entitled to have a judgment against him reduced by the amount of compensation paid to an injured employee if he can prove that concurrent negligence of the employer contributed to the injuries suffered by the employee. We have examined the transcript and have found no evidence that the employer contributed to the injuries of the employee; it follows that the *Witt* v. *Jackson* instruction was properly refused.[3] ■ It is proper to withdraw the question of contributory negligence from the jury where the trial court can hold as a matter of law that only one inference can be drawn rationally from the evidence. The possibility of contributory negligence is not enough and an

[1]Obviously, in either of these situations, the jury will necessarily be concerned with the amount of the claim urged by the employer-intervener and different forms of verdict and of judgment will be required.

[2]The statute expressly provides that the court shall order litigation costs to be "paid *from* any judgment"; and that it shall, "after the payment" of such expenses, "apply *out of* the amount of such judgment," an amount to reimburse the intervener for its claim. (Italics supplied.)

[3]While the jury's verdict determines that the condition of the area in which plaintiff was working was unsafe, there is no evidence to show that the employer knew, or should have known, of the unsafe condition. (See *Jones* v. *McFarland Co-Op Gin, Inc.* (1965) 237 Cal.App.2d 94, 98 [46 Cal.Rptr. 572].)

inference of fact must be based on substantial evidence. (*Wigodsky* v. *Southern Pac. Co.* (1969) 270 Cal.App.2d 51 [75 Cal.Rptr. 419].)

### III

 Defendant alleges that section 3855 of the Labor Code was misinterpreted. That section reads as follows: "If the employee joins in or prosecutes such action, either the evidence of the amount of disability indemnity or death benefit paid or to be paid by the employer or the evidence of loss of earning capacity by the employee shall be admissible, but not both. Proof of all other items of damage to either the employer or employee proximately resulting from such injury or death is admissible and is part of the damages."

In the case at bench, both plaintiff and the employer-intervener were represented by the same attorney. The witness who testified as to the amounts paid under the workmen's compensation laws was called by that attorney in his capacity as counsel for the intervener. In addition, the trial court allowed plaintiff to introduce evidence both of loss of earnings and of loss of earning capacity. At plaintiff's request, the trial court instructed on both elements of damage.[4]

Defendant argues that section 3855 is unclear as to whether "disability indemnity" refers to temporary disability *and* permanent disability payments or just to permanent disability payments. Secondly, defendant alleges that it is unclear as to whether the section precludes all parties[5] or just plaintiff from introducing into evidence both the amount of disability payments and loss of earning capacity.[6]

However, we conclude that, on the record before us, we need not, and should not, attempt to determine the interesting questions raised by the statutory language. The purpose of the section is to prevent a plaintiff from securing a double recovery for the same elements of damage. A comparison of the verdict—$15,000—with the admittedly proper elements of damage results in a conclusion that no such double recovery took place here. The

---

[4]While we do not find that defendant expressly objected to the plaintiff's evidence at the time it was offered, there had been a long discussion of the problem raised by section 3855 at the time the opening statements were being made. The position of the trial court, at that time, made a subsequent objection unnecessary. We think that defendant legitimately raises it on this appeal.

[5]If, for example, an employee-plaintiff, in his case-in-chief, introduces evidence of loss of earning capacity, is an employer-intervener thus barred from proving the amount of its statutory claim; and is a defendant tortfeasor having a legitimate *Witt* v. *Jackson* defense also barred from proving the amount therein involved?

[6]Since the statute speaks of "earning capacity," does it affect the right of plaintiff to prove "loss of earnings"—past and future? (For the difference between the two items, compare BAJI 14.11 with 14.12, formerly 174F and 174N.

undisputed compensation payments by the employer-intervener amounted to almost $10,000, leaving only $5,000 for plaintiff. The evidence of plaintiff's physical injuries, the pain and suffering attendant thereon, and the personal inconveniences that resulted from them would fully justify an award of at least the amount he will receive. Under these circumstances, even if the trial court erred in allowing plaintiff and the intervener to prove both loss of earnings and of earning capacity, and in instructing the jury on both types of damage,[7] defendant has shown no prejudice.

## IV

■ Defendant asserts three instances of alleged misconduct by counsel for plaintiff. All three matters were included as bases for its motion for a new trial. That motion was denied. The implied finding that the three matters complained of were not prejudicial is one which we see no reason to re-examine here. The trial court was in a better position than we to weigh the effect of the minor matters on the jury.

## V

■ Defendant argues that the court admitted photographs showing portions of the fence "far removed" from the place of Kuhlmann's injury, and that this was error. The admissibility of authenicated photographs when relevant to an issue is well established. (*Berkovitz* v. *American River Gravel Co.* (1923) 191 Cal. 195, 201 [215 P. 675].) We do not believe that photographs of the fence not directly at the point of injury are irrelevant. Counsel for the defense, in objecting, merely stated that the photographs "range in area," but there was no showing that the range was so great as to make the photographs irrelevant.

## VI

■ Defendant alleges that it was improper to give BAJI instructions 174B and 174E relating to future medical care, on the ground that there was no showing that plaintiff would need future medical care. (See *Silvester* v. *Scanlan* (1933) 136 Cal.App. 107 [28 P.2d 97].) However, the record shows that Doctor Gamble testified that over a period of years plaintiff's condition was likely to lead to degenerative arthritic changes, inferentially meriting further medical attention.

---

[7]To the effect that there was no error, see *Robison* v. *Atchison, T. & S.F. Ry. Co.* (1962) 211 Cal.App.2d 280 [27 Cal.Rptr. 260]; *Swanson* v. *Bogatin* (1957) 149 Cal.App.2d 755, 758 [308 P.2d 918].

## VII

Defendant asserts that the court should have given instructions concerning an employer's duty to provide a safe place to work and instructions concerning the employer's concurrent negligence. There is no showing that the employer did not provide a safe place to work, nor that it was negligent, and therefore instructions on these issues are not warranted.[8]

## VIII

Defendant alleges error in failing to give an instruction relating to reaching a verdict by chance (BAJI 181). An instruction to the jury which invites the use of the quotient method of computing damages is error. (1 Stanbury, Cal. Trial and Appeal, § 666, pp. 730, 731.) However, it is not prejudicial error to fail to give a contrary instruction, prohibiting a chance verdict. In the case at bench, the jury was instructed that "each of you should deliberate and vote on each issue to be decided." In view of this instruction and other instructions related to reaching a verdict, failure to give BAJI 181, if error at all, would not be prejudicial error.

## IX

Defendant argues that the judge failed to read BAJI 173 and 173A after informing the jury of the amount of the prayer. When a juror requested such information, and the judge indicated his intention of complying, defense counsel made no objection other than to say: "Well, Your Honor, I think some other instruction then would have to go with that." The judge indicated agreement. But, after the court had read the prayer, defense counsel did not follow up his original statement with any requested instruction; having remained silent at that time, defendant cannot complain here. The reading of the prayer is not per se error. (*Buswell* v. *City & County of San Francisco* (1948) 89 Cal.App.2d 123, 133 [200 P.2d 115].)

## X

Defendant urges that BAJI 172, to the effect that a jury should not attempt to punish a defendant in its assessment of damages, should have been given. The instructions given to the jury fully and properly instructed the jury on the matters to be considered in arriving at its verdict.[9] In view of the size of the verdict, defendant hardly can claim prejudice.

---

[8]See discussion of *Witt* v. *Jackson* under part II hereof.

[9]Those instructions, in part, were: "If, adhering to the court's instructions, you should find that plaintiff is entitled to a verdict against defendant, it then will be your duty to award (plaintiff) (the party so entitled) such amount of damages as will compensate him reasonably for all detriment suffered by him and of which

## XI

■ Defendant objects that the notice of entry of judgment served on it by counsel for plaintiff inaccurately describes the judgment as being in favor of both plaintiff and intervener, whereas the judgment as entered is in favor of plaintiff alone. Since the only function of that notice was to start running the time for subsequent steps in the case and the timeliness of those steps is not herein involved, the mistake is immaterial. Defendant nowhere suggests that it was in any way misled as to the form of judgment actually entered.

■ However, as we have pointed out above, the judgment was improper in form. Since the employer had, by intervention, become a party to the action, the final judgment should, in express terms, have determined its rights. While the intervener has not appealed, the defendant is entitled to have entered a judgment which finally determines the rights of all parties against it. As we have said above, since the error is one which can be corrected by a clerical change in the wording, there is no need to retry the case. We hereinafter direct the procedural steps to be taken.

## XII

■ Defendant contends that there were errors with reference to the taxation of costs. The cost bill originally filed purported to be on behalf of both plaintiff and intervener and it did not segregate the costs claimed by each. When defendant's motion to tax came on for hearing before a commissioner sitting as a judge pro tempore, he ordered that a corrected bill be prepared and filed. The amended bill, filed pursuant to that order, omitted the item attributable to the intervener but it still purported to be on behalf of both parties. A second amended bill, on behalf of plaintiff only, was then filed. The motion to tax then came on for hearing before the trial judge. Defendant here argues: (1) that the trial judge, in effect, reversed an earlier ruling by the judge pro tem.; and (2) that the two amended bills were not filed within the time permitted by section 1033 of the Code of Civil Procedure.

However, the commissioner had never ruled on the original bill; his direc-

---

defendant's neglignce, as found by you, was a proximate cause—whether such detriment could have been anticipated or not.

"(Should your decision be to award damages to the plaintiff) ................, in arriving at the amount of the award, you shall determine (each of the items) of claimed detriment which I now am about to mention, provided that you find it to have been suffered by him, and as a proximate result (of defendant's negligence).

"The burden rests upon the plaintiff to prove by a preponderance of the evidence the elments of his damage (if any). The mere fact that an accident happened, considered alone, would not support a verdict for any particular sum."

tion to plaintiff to file an amended bill was not the equivalent of an order striking the original bill and was an order of doubtful validity. The judge clearly proceeded to determine the motion to tax directed to the original and timely bill. His order struck the only item then objected to by defendant. There was no error.

## XIII

 Defendant argues that a "declaration" by plaintiff's counsel, in opposition to the defendant's motion for a new trial, was filed after the time allowed by statute. We have read the so-called "declaration." It is, in fact, an argument of law and not a declaration of any facts not already of record; we can see no reason why the court should not have considered it.

The judgment is modified by inserting, in the last paragraph thereof, following the typewritten words "plaintiff, Harold Kuhlmann," the words "and intervenor, Foremost Dairies, Inc."; as so modified, it is affirmed. Respondents shall recover their costs on this appeal.

Files, P. J., concurred.

**DUNN, J.**—I concur in the judgment, but disagree with the majority's conclusion that, under the circumstances here presented, the jury's verdict need not separately fix the damages to be awarded to the plaintiff and the intervener.

While failure to require the jury to segregate its awards may be harmless error in some cases, as here, that practice should not be given the imprimatur of this court. The parties are entitled to a finding by the jury of the amount due the employer-insurer,[1] if for no other reason than to insure the jury's consideration of this item and to give added meaning to the additional award, if any there be, to the injured plaintiff. Labor Code, section 3856 does not dispense with the requirement of separate verdicts. That section merely directs the trial judge to fix *priorities* in the awards. (Cf.: *Eldridge* v. *Truck Ins. Exchange* (1967) 253 Cal.App.2d 365 [61 Cal.Rptr. 347].) I do not read Labor Code, section 3856 as adopting a procedure wherein separate verdicts are not required.

The possibilities of prejudice inherent in allowing a jury to return a single award may be illustrated by supposing an action wherein the

---

[1]"There can be little doubt but that, in a case where an employer intervenes in the employee's action for reimbursement of compensation payments paid to the employee, separate judgments may be rendered in favor of the employer and employee." *Fernandez* v. *Consolidated Fisheries, Inc.* (1953) 117 Cal.App.2d 254, 264 [255 P.2d 863].

employer-insurer paid benefits totaling $5,000. The amount of its damage would be fixed as a matter of law. *Board of Administration* v. *Ames* (1963) 215 Cal.App.2d 215, 223-229 [29 Cal.Rptr. 917]. Having in mind the vagaries of human nature, it is neither beyond experience nor the realm of possibility to find a jury, for reasons extrinsic to the case, deciding to award the employer-insurer only $2,500 and give the plaintiff another $2,500 for his injuries. Faced with an award totalling $5,000 what would the trial court do? If it decided that the jury ignored the employer and intended the whole sum for the plaintiff, it would unjustly benefit the plaintiff; if it concluded that the employer-insurer got it all and the plaintiff none, similar injustice would occur. And if it granted both claimants a new trial, the defendant would suffer prejudice by the requirement that he again go to the expense of defending against both claimants rather than the one who actually was short-changed by the jury. In summary, the trial court could only speculate what the jury intended by its verdict. To avoid such a dilemma, the trial court must require separate verdicts.